FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2026 MAY 19 P 12: 08

MARVELLE J. BALLENTINE,

    *Plaintiff,*

    v.

NATIONAL CENTER FOR MISSING
& EXPLOITED CHILDREN; and
KATIE HALL, individually,

    *Defendants.*

Case No. 1:24 CV. 1341 MSN-WBP

## COMPLAINT FOR DAMAGES

### PRELIMINARY STATEMENT

1.    On or about April 22, 2026, Defendant Katie Hall, Corporate Counsel for the National Center for Missing & Exploited Children, drafted, signed, and transmitted two letters on NCMEC letterhead concerning Plaintiff Marvelle J. Ballentine.

2.    NCMEC issued two such letters, identical in substantive text, each keyed to one of two pending federal civil actions in which Plaintiff is plaintiff. References herein to "the April 22, 2026 letter" refer to the content shared by each of the two letters.

3.    The April 22, 2026 letter characterizes itself as a response to a "subpoena issued April 9, 2026." No subpoena was served on NCMEC in connection with Plaintiff. The procedural predicate asserted on the face of the letter did not exist.

4.    The April 22, 2026 letter states that NCMEC received two CyberTipline reports "concerning" three identifiers associated with Plaintiff, without establishing that any report contained those identifiers or that the identifiers referred to a single person.

5.      Under 18 U.S.C. § 2258A, a provider must make a report to NCMEC's CyberTipline after obtaining actual knowledge of facts or circumstances from which there is an apparent violation of specified federal child-exploitation statutes.

6.      The April 22, 2026 letters were transmitted to Plaintiff's commercial mail-receiving address in Alexandria, Virginia, where third-party employees of the mail-receiving provider opened, scanned, and processed the letters in the ordinary course of business.

7.      Plaintiff brings this action seeking compensatory and punitive damages for defamation per se and defamation by implication.

**JURISDICTION AND VENUE**

8.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a citizen of the State of Florida. Defendant NCMEC is a Virginia non-profit corporation with its principal place of business in Virginia. On information and belief, Defendant Katie Hall is a citizen of a state other than Florida. Complete diversity of citizenship exists among all parties. The amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over any claim that does not independently meet the amount-in-controversy threshold, to the extent such claim forms part of the same case or controversy.

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district. The letters were issued on NCMEC letterhead by NCMEC's Corporate Counsel from NCMEC's principal place of business in Alexandria, Virginia, and were transmitted to Plaintiff's commercial mail-receiving address in Alexandria, Virginia.

2

11.     This Court has personal jurisdiction over Defendant NCMEC. NCMEC is headquartered at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314, within the Alexandria Division of this district.

12.     This Court has personal jurisdiction over Defendant Hall under Virginia Code § 8.01-328.1(A)(3). Hall caused tortious injury in this Commonwealth by acts in this Commonwealth. Hall drafted, signed, and transmitted the April 22, 2026 letters from NCMEC's principal place of business at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314, within this judicial district. The letters were transmitted to Plaintiff's commercial mail-receiving address in Alexandria, Virginia, within this judicial district. The exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment.

**PARTIES**

13.     Plaintiff Marvelle J. Ballentine, also known as Jay Ballentine, is an adult citizen of the State of Florida. At all times relevant to this Complaint, Plaintiff maintained a mailing address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia 22307, through a commercial mail-receiving agency authorized to receive and process mail on Plaintiff's behalf.

14.     Defendant National Center for Missing & Exploited Children is a Virginia non-profit corporation with its principal place of business at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314. NCMEC operates under federal authorization in connection with the CyberTipline established under 18 U.S.C. § 2258A.

15.     Defendant Katie Hall is an individual who served as Corporate Counsel at NCMEC at its principal place of business at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314, at the time of the events alleged in this Complaint. On

information and belief, Hall is a citizen of a state other than Florida. Hall is sued in her individual capacity for her personal conduct in drafting, signing, and transmitting the April 22, 2026 letters from NCMEC's Alexandria, Virginia office.

**FACTS**

### A.    The Pending Federal Litigation

16.    Plaintiff is plaintiff in two pending federal civil actions in the Middle District of Florida: Case No. 6:26-cv-00376-AGM-DCI; and Case No. 6:26-cv-00286-AGM-DCI.

17.    The actions in the Middle District of Florida arise from Meta Platforms, Inc.'s July 4, 2022 issuance of a notice that interrupted Plaintiff's ability to perform third-party contracts through Plaintiff's Facebook account and withheld Plaintiff's account-resident business property.

18.    A central factual question in the Middle District of Florida actions is whether any CyberTipline report under 18 U.S.C. § 2258A was filed concerning Plaintiff.

19.    Before the April 22, 2026 letters, no CyberTipline report had been identified, produced, attributed to Meta, connected to Plaintiff's Facebook account, or tied to Meta's July 4, 2022 contract interference in any forum.

20.    Meta Platforms, Inc. has affirmatively cited Plaintiff's "absence-of-report" allegation in its pleadings as a basis for legal arguments adverse to Plaintiff.

21.    As of April 22, 2026, no defendant in any of the Middle District of Florida actions had introduced any document purporting to establish the existence of a CyberTipline report concerning Plaintiff.

22.    The docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI are publicly accessible through the federal Public Access to Court Electronic Records (PACER) system.

23. NCMEC and Hall had reason to know that the docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI each contained publicly-filed claims brought by Plaintiff, and that the docket of Case No. 6:26-cv-00286-AGM-DCI contained publicly-filed claims predicated on the linkage of Plaintiff's name to child sexual exploitation terminology.

**B.    The April 22, 2026 Letter: Drafting and Issuance**

24. On or about April 22, 2026, NCMEC, through Hall, issued two letters concerning Plaintiff.

25. Each of the two letters is identical in substantive text.

26. One letter was issued in connection with, and references on its face, Case No. 6:26-cv-00376-AGM-DCI.

27. The other letter was issued in connection with, and references on its face, Case No. 6:26-cv-00286-AGM-DCI.

28. NCMEC was not served with a subpoena in either action.

29. NCMEC's issuance of two letters, each keyed to a separate Middle District of Florida action, reflects NCMEC's processing of two separate matters keyed to two specific case captions and case numbers.

30. References in this Complaint to "the April 22, 2026 letter" refer to the content shared by each of the two letters.

31. Each letter identified Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

32. The April 22, 2026 letter states that NCMEC received two CyberTipline reports concerning Plaintiff.

33.    Under 18 U.S.C. § 2258A, CyberTipline reports are filed by electronic service providers upon obtaining actual knowledge of facts or circumstances from which there is an apparent violation of the child-exploitation statutes enumerated in the statute.

34.    The April 22, 2026 letter does not state that the two reports referenced therein arose under any mechanism other than 18 U.S.C. § 2258A, does not disclaim any connection to the enumerated offenses, and does not identify any alternative statutory or administrative basis for the reports' existence.

35.    The April 22, 2026 letter stated, in pertinent part: *"NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present."*

36.    Before Hall drafted and transmitted the April 22, 2026 letters, no subpoena had been served on NCMEC in connection with Plaintiff.

37.    The April 22, 2026 letter stated, in its opening sentence: *"In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ("NCMEC") provides its written responses as detailed below."*

38.    No process server delivered a subpoena to NCMEC in connection with Plaintiff before Hall drafted and transmitted the April 22, 2026 letters.

39.    No court order required NCMEC to issue the April 22, 2026 letters.

40.    No subpoena return, proof of service, certificate of service, or process-server affidavit existed showing service of a subpoena on NCMEC before Hall drafted and transmitted the April 22, 2026 letters.

41.    Hall was NCMEC's Corporate Counsel when she drafted and transmitted the April 22, 2026 letters.

6

42. As Corporate Counsel, Hall was responsible for legal correspondence issued by NCMEC in response to claimed legal process.

43. On information and belief, Hall reviewed or had access to NCMEC records sufficient to determine whether NCMEC had been served with a subpoena before issuing the April 22, 2026 letters.

44. On information and belief, NCMEC maintains ordinary legal-intake records sufficient to reflect whether subpoenas have been served on NCMEC.

45. Hall's signature appears on each of the April 22, 2026 letters.

46. Hall is identified on each of the April 22, 2026 letters as the sender.

47. Hall controlled or approved the wording of the April 22, 2026 letters.

48. Hall selected the language characterizing the April 22, 2026 letters as a response to a subpoena.

49. Hall nevertheless drafted and transmitted the April 22, 2026 letters.

50. NCMEC and Hall reviewed or had access to the docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI before drafting, signing, and transmitting the April 22, 2026 letters.

### C.    The April 22, 2026 Letter: Content Defects

51. The April 22, 2026 letter did not identify any report number, report date, or reporting electronic service provider.

52. The April 22, 2026 letter did not state that Meta Platforms, Inc. submitted either report, that either report concerned Plaintiff's Facebook account, or that either report concerned Meta's July 4, 2022 contract interference.

53.    The April 22, 2026 letter linked Plaintiff's three identifiers in the disjunctive using "and/or" without establishing that any single identifier corresponded to either report.

54.    The April 22, 2026 letter did not include a custodian-of-records declaration or a certification under Federal Rule of Evidence 902(11) or 902(12).

55.    The name "Jay Ballentine," standing alone, is not uniquely identifying. The April 22, 2026 letter did not state that NCMEC used any disambiguation process to determine that any CyberTipline report associated with the name "Jay Ballentine" concerned Plaintiff rather than another person using the same or similar name.

56.    The April 22, 2026 letter did not state whether the identifiers "Marvelle J. Ballentine," "Jay Ballentine," or jaychizza@icloud.com appeared in any CyberTipline report, appeared in any electronic-service-provider submission, appeared in NCMEC's internal records, or were derived from any source independent of the April 22, 2026 letter.

57.    The April 22, 2026 letter did not state that NCMEC had determined that "Marvelle J. Ballentine," "Jay Ballentine," and jaychizza@icloud.com referred to the same person.

**D.    Statutory Imputation and Defamatory Meaning**

58.    Under 18 U.S.C. § 2258A, an electronic service provider is required to report to NCMEC's CyberTipline upon obtaining actual knowledge of facts or circumstances from which there is an apparent violation of specified federal child-exploitation statutes.

59.    The enumerated statutes referenced in 18 U.S.C. § 2258A include 18 U.S.C. § 2251 (sexual exploitation of children), § 2251A (selling or buying of children), § 2252 (certain activities relating to material involving the sexual exploitation of minors), §

2252A (certain activities relating to material constituting or containing child pornography), and § 2422(b) (coercion and enticement of minors).

60. A reader of the April 22, 2026 letter, applying the statutory framework of 18 U.S.C. § 2258A, would understand the letter to convey that NCMEC possesses two reports concerning Plaintiff arising from facts or circumstances from which there is an apparent violation of the child-exploitation statutes enumerated in § 2258A.

61. The April 22, 2026 letter, by linking Plaintiff's full legal name to two CyberTipline reports, imputes to Plaintiff conduct constituting offenses involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

62. The imputation conveyed by each of the two April 22, 2026 letters is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

### E. Transmission, Publication, and Continuing Exposure

63. Each of the two April 22, 2026 letters was transmitted to Plaintiff's commercial mail-receiving agency address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia 22307.

64. The address is operated by a commercial mail-receiving agency. In connection with the creation and maintenance of the mailbox account, Plaintiff was required to provide identifying information, including Plaintiff's full legal name and photographic identification. USPS Form 1583 authorizing the commercial mail-receiving agency to receive and process mail on Plaintiff's behalf was on file.

65. The commercial mail-receiving agency maintains a mail-management system. The mail-management system associates incoming mail, scanned mail images,

account records, Plaintiff's verified identity, Plaintiff's full legal name, and Plaintiff's photographic identification with Plaintiff's mailbox account.

66. The commercial mail-receiving agency opens incoming envelopes, scans contents, and uploads digital images to the mail-management system in the ordinary course of business.

67. On or about April 28, 2026, a commercial mail-receiving agency employee opened the envelope containing the two letters, visually reviewed the contents of each letter, scanned each letter, and uploaded a digital reproduction of each letter to the mail-management system.

68. The employee who visually reviewed, scanned, and uploaded each letter is an independent commercial mail-processing employee. The employee is not Plaintiff, not Plaintiff's attorney, not Plaintiff's litigation representative, and not Plaintiff's confidential agent for purposes of receiving Plaintiff's confidential correspondence.

69. The employee viewed, handled, and scanned the contents of each letter in the ordinary course of the agency's commercial mail-processing business.

70. NCMEC, as an institutional sender represented by corporate counsel, knew or had reason to know the address was a commercial mail-receiving agency address and that mail transmitted to it would be opened, scanned, viewed, digitized, and processed by third-party commercial employees in the ordinary course of business.

71. NCMEC transmitted the letters to the commercial mail-receiving agency address rather than to the clerk of court in either Middle District of Florida action, to any party's counsel of record, or to a secure transmission channel.

72.    Following the scanning and upload, the commercial mail-receiving agency forwarded the physical envelope containing both letters to Plaintiff's designated local mailbox in the ordinary course of its mail-forwarding operations.

73.    The administrator of both the commercial mail-receiving agency account and the local mailbox account opened the forwarded envelope and read both letters in the ordinary course of her administrative duties.

74.    The administrator who opened and read the letters is not Plaintiff, not Plaintiff's attorney, not Plaintiff's litigation representative, and not Plaintiff's confidential agent for purposes of receiving Plaintiff's confidential correspondence.

75.    The digital reproductions of the April 22, 2026 letters remain stored in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

76.    The mail-management system associates the digital reproductions of the April 22, 2026 letters with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

77.    On information and belief, administrators, employees, contractors, or other persons with system-level access to the commercial mail-receiving agency's mail-management system can access account records and scanned mail images associated with Plaintiff's mailbox account.

78.    Plaintiff does not know the identities of all persons with administrative or system-level access to the commercial mail-receiving agency's mail-management system.

79.    Plaintiff does not control the commercial mail-receiving agency's mail-management system, including access permissions, administrative access, audit logs,

retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

**F.      Receipt and Plaintiff's Response**

80.    On or about April 28, 2026, the digital images of the April 22, 2026 letters became accessible to Plaintiff through the commercial mail-receiving provider's mail-management system. Plaintiff opened, viewed, and read the letters on that date.

81.    On reading the April 22, 2026 letters, Plaintiff's immediate cognitive response was that the imputation in the letters was false and that the letters, if disseminated, would foreseeably cause persons receiving them to believe Plaintiff had engaged in conduct involving sexual exploitation of minors.

82.    Plaintiff suffered humiliation, embarrassment, mental suffering, and injury to reputation as a result of the April 22, 2026 letters.

## COUNT I — DEFAMATION PER SE AND DEFAMATION BY IMPLICATION

## (Letter Referencing Case No. 6:26-cv-00376-AGM-DCI)

(Against Defendants NCMEC and Hall)

83.    Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Sections A, B, C, D, E, and F of the Factual Allegations as if fully set forth herein.

84.    This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

85.    On or about April 22, 2026, NCMEC and Hall published the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI to third parties through the transmission and processing described in Section E of this Complaint.

86. The publication occurred through two human-review events: (i) the visual review of the contents of the letter by the employee of the commercial mail-receiving agency on opening, processing, and scanning the envelope; and (ii) the reading of the letter by the administrator of Plaintiff's mailbox accounts upon receipt of the forwarded envelope.

87. The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI created by the commercial mail-receiving agency on April 28, 2026 remains associated in the commercial mail-receiving agency's mail-management system with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

88. The April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is of and concerning Plaintiff. The letter identifies Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

89. The April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is defamatory per se. The letter imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

90. The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is that NCMEC has associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline is a federal reporting mechanism under 18 U.S.C. § 2258A triggered by an electronic service provider's actual knowledge of facts or circumstances from which there is an apparent violation of the federal child-exploitation statutes enumerated in § 2258A, including 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and

2422(b). A reasonable reader would understand the association to convey that NCMEC possesses reports linking Plaintiff to suspected child-exploitation conduct.

91.    In the alternative, to the extent the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is not defamatory per se on its face, the letter is defamatory by implication. Hall used the verb "concerning" and placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." The letter does not include limiting language stating that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-enforcement referral. The omission of those limitations caused the letter to convey that the reports concern Plaintiff personally. The circumstances alleged above support a reasonable inference that Hall intended the letter to convey that the reports concerned Plaintiff personally. The letter conveyed that meaning to the third-party recipients who reviewed and read it.

92.    The imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI, whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

93.    NCMEC and Hall acted with at minimum negligence in issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI without verifying the existence of the asserted subpoena and without an internal review process adequate to detect the absence of compulsory process.

94.    Hall acted with actual malice. Hall knew, or recklessly disregarded the truth, that no subpoena had been served on NCMEC at the time she characterized the April 22,

2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI as a response to a subpoena issued April 9, 2026.

95. Hall further acted with actual malice as to the defamatory implication conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI. Hall issued the letter linking Plaintiff's full legal name to two CyberTipline reports while omitting the report numbers, dates, matched identifiers, submitters, platforms, content basis, and referral status that would be necessary to determine whether the reports actually concerned Plaintiff, concerned a different identifier, concerned a different platform, or concerned Meta's July 4, 2022 contract interference.

96. Under Virginia defamation per se doctrine, Plaintiff is entitled to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

97. Plaintiff has suffered actual damages including humiliation, embarrassment, mental suffering, and injury to reputation.

98. The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI persists in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

99. The mail-management system associates the digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

100. Plaintiff does not control the mail-management system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

15

101. Defendants acted willfully, wantonly, and in conscious disregard of Plaintiff's rights by issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI with knowledge, or reckless disregard, that no subpoena had been served on NCMEC and that the letter's association of Plaintiff's full legal name with two CyberTipline reports would cause reputational harm. Plaintiff is entitled to punitive damages, subject to the cap established by Va. Code § 8.01-38.1.

## COUNT II — DEFAMATION PER SE AND DEFAMATION BY IMPLICATION
### (Letter Referencing Case No. 6:26-cv-00286-AGM-DCI)
(Against Defendants NCMEC and Hall)

102. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Sections A, B, C, D, E, and F of the Factual Allegations as if fully set forth herein.

103. This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

104. On or about April 22, 2026, NCMEC and Hall published the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI to third parties through the transmission and processing described in Section E of this Complaint.

105. The publication occurred through two human-review events: (i) the visual review of the contents of the letter by the employee of the commercial mail-receiving agency on opening, processing, and scanning the envelope; and (ii) the reading of the letter by the administrator of Plaintiff's mailbox accounts upon receipt of the forwarded envelope.

106. The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI created by the commercial mail-receiving agency on April 28, 2026 remains associated in the commercial mail-receiving agency's mail-management

16

system with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

107.    The April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is of and concerning Plaintiff. The letter identifies Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

108.    The April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is defamatory per se. The letter imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

109.    The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is that NCMEC has associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline is a federal reporting mechanism under 18 U.S.C. § 2258A triggered by an electronic service provider's actual knowledge of facts or circumstances from which there is an apparent violation of the federal child-exploitation statutes enumerated in § 2258A, including 18 U.S.C. §§ 2251, 2251A, 2252, 2252A, and 2422(b). A reasonable reader would understand the association to convey that NCMEC possesses reports linking Plaintiff to suspected child-exploitation conduct.

110.    In the alternative, to the extent the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is not defamatory per se on its face, the letter is defamatory by implication. Hall used the verb "concerning" and placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." The letter does not include limiting language stating that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-

17

enforcement referral. The omission of those limitations caused the letter to convey that the reports concern Plaintiff personally. The circumstances alleged above support a reasonable inference that Hall intended the letter to convey that the reports concerned Plaintiff personally. The letter conveyed that meaning to the third-party recipients who reviewed and read it.

111. The imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI, whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

112. NCMEC and Hall acted with at minimum negligence in issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI without verifying the existence of the asserted subpoena and without an internal review process adequate to detect the absence of compulsory process.

113. Hall acted with actual malice. Hall knew, or recklessly disregarded the truth, that no subpoena had been served on NCMEC at the time she characterized the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI as a response to a subpoena issued April 9, 2026.

114. Hall further acted with actual malice as to the defamatory implication conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI. Hall issued the letter linking Plaintiff's full legal name to two CyberTipline reports while omitting the report numbers, dates, matched identifiers, submitters, platforms, content basis, and referral status that would be necessary to determine whether the reports actually concerned Plaintiff, concerned a different identifier, concerned a different platform, or concerned Meta's July 4, 2022 contract interference.

18

115.    Under Virginia defamation per se doctrine, Plaintiff is entitled to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

116.    Plaintiff has suffered actual damages including humiliation, embarrassment, mental suffering, and injury to reputation.

117.    The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI persists in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

118.    The mail-management system associates the digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

119.    Plaintiff does not control the mail-management system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

120.    Defendants acted willfully, wantonly, and in conscious disregard of Plaintiff's rights by issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI with knowledge, or reckless disregard, that no subpoena had been served on NCMEC and that the letter's association of Plaintiff's full legal name with two CyberTipline reports would cause reputational harm. Plaintiff is entitled to punitive damages, subject to the cap established by Va. Code § 8.01-38.1.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A.    On Counts I and II, against Defendants NCMEC and Hall, jointly and severally:

19

1.  Compensatory damages in the amount of *$25,000,000*, including presumed damages and actual damages.

2.  Punitive damages to the extent supported by actual malice findings, subject to the Va. Code § 8.01-38.1 cap.

B.  Costs of suit.

C.  Pre-judgment and post-judgment interest at the legal rate.

D.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Date: May 19, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
1520 Belle View Blvd, Ste. #5847
Alexandria, Virginia 22307
(407) 794-6503
jayballentine@protonmail.com

20

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
_____ALEXANDRIA_____ DIVISION



2026 MAY 19 P 12: 08

MARVELLE J. BALLENTINE
        Plaintiff(s),

        v.

Civil Action Number: ___1: 2U -CV- 1341-MSN-WBP

NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN; and KATIE HALL, individually
        Defendant(s),

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of _COMPLAINT FOR DAMAGES_____.
                                                                (Title of Document)

MARVELLE J. BALLENTINE_
Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _APRIL 18, 2026_ (Date)

                              **OR**

The following attorney(s) prepared or assisted me in preparation of_____.
                                                                (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____(Date)